## BECKWITH *v.* CHEEVER & a.

The owner of land, proposed to the plaintiff, that he might take timber from the land, upon paying for it in a certain way. The plaintiff said he would accept the proposition if he could get his brother to assist him. The owner, Bellows, told him he need not give a decided answer then, but might do so thereafter. The plaintiff afterwards engaged his brother to assist him in cutting the timber, but never notified Bellows, that he had accepted his proposition. Bellows subsequently made the same proposition to the defendants, who entered upon the land, and cut and carried away the timber, and the plaintiff brought an action on the case against them.

*Held,* that what passed between the plaintiff and Bellows, was a mere proposition, not accepted, that no contract was made, and that the action could not be maintained.

CASE. The declaration alleged that one Bellows made a contract with the plaintiff, by which he agreed to allow the plaintiff the right of entering upon a certain tract of land, and of cutting down and drawing the timber thereon, to the saw-mill of one Foristall, and that the plaintiff should have one half of the boards made from the timber, and such parts of the timber as should not be suitable for sawing; but that the defendants entered upon the land, and cut down the timber, and converted it to their own use.

At the trial of the case upon the general issue, it appeared in evidence, that Bellows owned a lot of land in Alstead, on which some hemlock trees were growing, and he proposed to the plaintiff to cut the timber, and haul it to Foristall's mill, for doing which the plaintiff was to have one half of all that was fit for sawing, and also all the parts of it not suitable for sawing, and the bark. The plaintiff told Bellows he thought he would accept his proposition; and that he would accept it, if he could get his brother to assist him. Bellows said he need not give him a decided answer then, but might do so thereafter. They then separated, with the understanding that the plaintiff might go upon the lot, and cut and haul the timber without seeing Bellows further upon the subject. The contract was not closed farther than as above stated, and the plaintiff never notified Bellows that he had accepted his proposition, which was made in October, 1848.

In the month of November, 1848, Bellows proposed to Washburn, one of the defendants, to cut the timber upon the terms proposed to the plaintiff, and told him he had made the proposition to the plaintiff, and that Washburn might cut the timber upon the terms aforesaid, if the plaintiff did not do so, and desired him to speak to the plaintiff before cutting the timber. Washburn did not mention the subject to the plaintiff, but, in connection with Cheever, went upon the lot and cut and hauled away the timber, and delivered one half of it to Bellows, according to Bellows's proposition. Bellows knew that the defendants were cutting the timber, but made no objection to it.

The plaintiff, after the proposition made to him by Bellows, engaged his brother to assist him in cutting and hauling the timber, but of this Bellows had no knowledge. At the time the defendants were cutting the timber, the plaintiff was at Walpole; but while they were hauling it, he forbade the taking it away.

A verdict was taken by consent, for the plaintiff, subject to the opinion of the court, upon the foregoing case.

*Wait*, for the plaintiff. Although Bellows received one half of the timber from the defendants, this cannot alter the nature of the case, or the rights of the parties, for he might well have supposed that they were acting with the assent of the plaintiff, and pursuant to his instructions.

If the conversation between Bellows and the plaintiff may be regarded merely as a license from Bellows, yet the plaintiff acquired rights under it, which no stranger could interfere with. The proposition of Bellows to the defendants cannot be regarded as a revocation of it, for he requested one of them to mention the subject to the plaintiff, which was not done. The license to the plaintiff, then, continued in force and the defendants could not interfere with it.

However, this was not a license, but a contract, depending solely on the contingency of the plaintiff's being able to procure the assistance of his brother. By the agreement, no notice was to be given to Bellows. The fact that the plaintiff did procure the assistance of his brother, is of itself evidence of his accept-

ance of the proposition, which left nothing further to be done in order to complete the contract.

The principle which enables a master to maintain an action against one who entices away his servant, is applicable here. The cases which settle that doctrine proceed upon the ground that the master has a valuable interest in the services of his servant. *Blake* v. *Lanyon*, 6 T. R. 221 ; *Keane* v. *Boycott*, 2 Hen. Bl. 511 ; *Hart* v. *Aldridge*, Cowp. 54. It was held, by Lord *Kenyon*, that an action would lie for preventing certain negroes from coming to trade with the plaintiff, although he had no exclusive right to trade with them. *Tarleton* v. *McGauley*, Peake, 205. These cases show that where a person has properly placed himself in possession of the means of acquiring a pecuniary advantage, he has acquired a right which the law will protect.

*Vose*, for the defendants. No interest in the trees in question ever vested in the plaintiff, as no contract for them was ever closed with Bellows. He never accepted Bellows's proposition.

If the proposition is to be regarded as a license, yet no property in the trees ever vested in the plaintiff, as he never proceeded to act under the license.

The question appears to be, whether case can be maintained against a third person for exercising upon land acts which the plaintiff was licensed by the owner to perform.

If the license were upon a sufficient consideration, a remedy might exist against the owner of the land for non-performance of his agreement. But we find no precedent for any action like that now in question, and contend that no such action will lie.

GILCHRIST, C. J. The evidence, as stated in the case, shows an agreement between the plaintiff and Bellows, that the plaintiff might enter upon the land, and cut and take away the timber if he chose, but that he need not inform Bellows at that time whether he would accept his proposition. But we cannot disregard that part of the case in which it is stated that this information was to be given Bellows at some future day. This should

have been done within a reasonable time ; and the proper time would have been, whenever the plaintiff should determine to accept the proposition. Until this should be done, whatever had passed between them must be considered as merely a proposition, which the plaintiff was holding under consideration. The plaintiff did not notify Bellows, nor did he enter upon the land. He did nothing but engage his brother to assist him. It cannot with propriety be said that this, not brought home to the knowledge of Bellows, can be regarded as an acceptance. Neither party did any thing to make the proposition binding, and neither was bound ; and we certainly cannot perceive that Bellows had incurred any liability to the plaintiff, for he did nothing but make the proposition, and does not appear to have known that the plaintiff intended to act upon it. We think, therefore, that no contract had been made, and that the action cannot be maintained. The verdict must be set aside and there must be

*Judgment for the defendant.*